**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| ) | | |
| MANUEL MARIA LOJA LOJA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 26-11826-MJJ |
| | ) | |
| ANTONE MONIZ, Superintendent, Plymouth | ) | |
| County Correctional Facility, | ) | |
| DAVID WESLING, Field Office Director, | ) | |
| TODD LYONS, Acting Director U.S. | ) | |
| Immigration and Customs Enforcement, | ) | |
| MARKWAYNE MULLIN, U.S. Secretary | ) | |
| of Homeland Security, | ) | |
| TODD BLANCHE, Acting Attorney General, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**MEMORANDUM OF DECISION AND ORDER**

April 27, 2026

JOUN, D.J.

Manuel Maria Loja Loja ("Petitioner" or "Mr. Loja") brings this petition under 28 U.S.C. § 2241, seeking release from custody following an Immigration Judge's ("IJ") decisions (1) denying his request for bond and (2) denying a subsequent request for a new bond hearing based on newly presented evidence. Mr. Loja challenges the constitutional adequacy of the original bond hearing and the IJ's refusal to grant a further hearing.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

I recount relevant facts from Mr. Loja's original petition, [Doc. No. 1], and the petition's exhibits.

Mr. Loja, a citizen of Ecuador, has been detained at Plymouth County Correctional Facility since May 13, 2025. [Doc. No. 1 at 1, ¶¶ 1–2]. Prior to his detention, Mr. Loja lived in Brockton, Massachusetts, with his wife, who is a U.S. citizen, and their three children. [*Id*. at ¶ 1]. He has a pending Form I-130 to adjust his status, filed by his wife. [*Id*.]. Mr. Loja has been in the United States since 2013. [Doc. No. 1-2 at 10]. Mr. Loja's mother and five siblings reside in the United States, and he has no family in Ecuador to whom he could return. [*Id*.].

On April 26, 2021, Mr. Loja was involved in a domestic dispute with his wife that resulted in a criminal complaint and his wife obtaining a non-abuse order against him. [*Id*. at 9]. According to his wife, "[Mr. Loja] was arrested due to a clerical error in his record." [*Id*.]. One day later, Mr. Loja and his wife went to court. [*Id*.]. His wife withdrew the charges, and the case was dismissed. [*Id*.]. Since then, Mr. Loja has attended anger management courses and participated in couples' therapy with his wife through their church, and his wife has submitted a letter in support of him. [*Id*.].

On May 13, 2025, Mr. Loja was administratively arrested by ICE, and ICE issued him a Form I-200 ("Warrant for Arrest of Alien") and Form I-286 ("Notice of Custody Determination"). [Doc. No. 9 at 2] (citing [Doc. No. 9-1] and [Doc. No. 9-2]). On May 22, 2025, at Mr. Loja's request, he received a bond hearing in front of an IJ. [Doc. No. 1 at 3, ¶ 13]; *see also* [Doc. No. 9 at 2]. At the hearing, the Government opposed bond, arguing Mr. Loja was dangerous and posed a flight risk, relying solely on the I-213. [Doc. No. 1 at 3, ¶ 13]. Petitioner's counsel believes the IJ likewise relied only on the I-213 in making their determination. [*Id*.]. Specifically, the IJ "stated that release on bond was denied based upon the number and severity of the criminal charges – despite the fact that they had all been dismissed." [*Id*. at ¶ 14]. The IJ also relied on the expired abuse prevention orders, but as discussed *supra*, Petitioner's wife wrote a letter of support for her

husband denying any current dangerousness. [*Id*.]. Further, the IJ concluded that the Government had met its burden because of Petitioner's repeated "involvement with law enforcement," relying on the number and severity of the dismissed charges. [*Id*.]. The IJ then concluded that no amount of bond was appropriate. [*Id*.].

On June 6, 2025, as noted above, Mr. Loja's wife filed a Form I-130 Application to adjust his status as the immediate relative of a U.S. citizen. [*Id*. at 4, ¶ 16]. On June 26, 2025, an IJ denied Mr. Loja's request for a change in custody status and for a subsequent bond hearing, concluding that no changed circumstances justified to warrant another hearing. [Doc. No. 9-5 at 1].

## II.    ANALYSIS

At a custody redetermination or a bond hearing, the Government bears the burden of proving "by clear and convincing evidence that [the noncitizen] poses a danger to the community" or "by a preponderance of the evidence that [the noncitizen] poses a flight risk." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 41 (1st Cir. 2021). Though an IJ "need not discuss ad nauseam every piece of evidence," they "may not simply ignore substantial testimonial and documentary proof." *Garcia v. Hyde*, No. 25-cv-585, 2025 WL 3466312 at *1 (D.R.I. Dec. 3, 2025) (citing *Barnica-Lopez v. Garland*, 59 F.4th 520, 530 (1st Cir. 2023)). An IJ "may not give substantial weight to a police report in the absence of a conviction or corroborating evidence of the allegations contained in the report" in the adjustment-of-status context. *Rosa v. Garland*, 114 F.4th 1, 19 (1st Cir. 2024) (internal quotations omitted). A noncitizen may appeal their bond decision to the Board of Immigration Appeals ("BIA"), or they "may seek judicial review of an IJ's bond decision" by filing a petition for writ of habeas corpus. *Garcia*, 2025 WL 3466312 at *2.

When a noncitizen's request for bond is denied, the case is governed by common-law, rather than statutory, exhaustion—even if the noncitizen did not seek reconsideration of the IJ's

3

decision. *Garcia*, 2025 WL 3466312 at *6 (citing *Brito v. Garland*, 22 F.4th 240, 256 (1st Cir. 2021)). Common law exhaustion "cedes discretion to a [federal] court to decline the exercise of jurisdiction." *Brito*, 22 F.4th at 255 (citing *Anversa v. Partners Healthcare System, Inc.*, 835 F.3d 167, 174 (1st Cir. 2016)). The court "may find exhaustion to be unnecessary where 'a particular plaintiff may suffer irreparable harm if unable to secure immediate judicial consideration of his claim.'" *Garcia*, 2025 WL 3466312 at *6 (citing *Portela-Gonzalez v. Sec'y of the Navy*, 109 F.3d 74, 77 (1st Cir. 1997)).

### A.    Statutory Detention Framework

As a threshold matter, given Respondents acknowledgement "that the legal issues presented in this petition are similar to those [resolved in prior cases before me]," *see* [Doc. No. 9 at 3], consistent with those prior decisions, I find that Mr. Loja is detained pursuant to 8 U.S.C. § 1226(a) and its discretionary detention framework, which entitles him to a constitutionally adequate bond hearing. *See, e.g.*, *Rocha v. Hyde*, No. 25-cv-12584, 2025 WL 2807692 at *2 (D. Mass. Oct. 2, 2025); *Hilario Rodriguez v. Moniz*, No. 25-cv-12358 (D. Mass. Sept. 18, 2025).

### B.    Administrative Exhaustion

Respondents contend that the Court should deny the petition because Petitioner failed to exhaust his administrative remedies by not appealing the IJ's decisions to the BIA. [Doc. No. 9 at 3–4]. Respondents support for this argument is conclusory. *See generally* [Doc. No. 9 at 3–5]. For example, although the Government acknowledges that common-law exhaustion applies here, it contends that "any argument why the Court should excuse exhaustion is without merit." [*Id*. at 4]. I disagree. The loss of one's liberty is a "severe form of irreparable injury," *Ferrara v. United States*, 370 F. Supp. 2d 351, 360 (D. Mass. 2005), and "it would be perverse to find that loss of liberty somehow suddenly stops being irreparable harm just because it is being considered in the

4

immigration context," *Romero v. Hyde*, 795 F. Supp. 3d 271, 280 (D. Mass. 2025). Further delay in Mr. Loja's case will continue to irreparably harm him, and this Court will not require exhaustion in this case. *See, e.g.*, *Romero*, 795 F. Supp. 3d at 278.

### C.    New Bond Hearing

Finally, Respondents argue that any relief granted should be limited to a remand for a new bond hearing. I disagree. After his wife filed a Form I-130 petition to adjust his status as the immediate relative of a U.S. citizen, Mr. Loja requested a new bond hearing. [Doc. No. 1 at 4, ¶ 16]. The IJ denied that request despite this new evidence, which bears directly on Petitioner's risk of flight and alleged dangerousness. *See* [Doc. No. 9-5 at 1]. For the reasons discussed below, requiring Petitioner to pursue the same relief that has already been denied would be futile.

### D.    Constitutional Error of Law

Petitioner alleges, and the Respondents do not refute, that the IJ relied solely on the I-213 in Petitioner's case in denying Petitioner's request for bond. *See* [Doc. No. 1 at 3, ¶ 13]; *see generally* [Doc. No. 9]. The I-213, which is essentially a police report authored by an immigration officer, "repeated the allegations from the police reports" in this case, along with "dismissed criminal charges and expired domestic restraining orders." [Doc. No. 1 at 8, ¶ 33]. An IJ must determine that the facts in any police report it relies upon are both "reliable and that its use would not be fundamentally unfair." *Maurice v. Bondi*, 154 F.4th 15, 20 (1st Cir. 2025) (internal citations omitted). Petitioner contends that the IJ failed to do so, and Respondents do not dispute that assertion. *See* [Doc. No. 1 at 3, ¶ 13]; *see generally* [Doc. No. 9]. Specifically, Petitioner claims "the facts recited in the I-213 were themselves unreliable," pointing to Petitioner's wife's testimony that all charges were dismissed, and that his arrest was due to a clerical error. [Doc. No. 1 at 10, ¶ 37].

5

As I noted at the outset, the Government bears the burden of proving "by clear and convincing evidence" that a noncitizen "poses a danger to the community" or "by a preponderance of the evidence that [a noncitizen] poses a flight risk." *Hernandez-Lara*, 10 F.4th at 41. Reliance on the I-213 fails to meet this mark. An IJ "may not simply ignore substantial testimonial and documentary proof," *Garcia*, 2025 WL 3466312 at *1, yet the IJ here appears not to have considered Petitioner's wife's testimony. Nor did the IJ meaningfully consider her Form I-130 petition, concluding that it was insufficient to warrant a new bond hearing. *See* [Doc. No. 9-5 at 1].

This is insufficient. Petitioner has a fundamental right to due process, and reliance on an I-213—without corroborating the facts it contains and in the face of contrary testimony from both Petitioner and his wife—does not satisfy the evidentiary burden required to deny bond. The since-dismissed criminal charges involved Petitioner's wife, who now seeks his release, denies any ongoing abuse, and explains that the couple pursued marital counseling through their church (a fact also supported by a letter from the church). [Doc. No. 1 at 11, ¶ 43]. Petitioner's entire family resides in the United States, and he has no family in Ecuador to whom he could return. [Doc. No. 1-2 at 10]. This falls short of the evidentiary standards set forth in *Hernandez-Lara v. Lyons*, 10 F.4th at 41, and violates his constitutional right to due process.

### E.   <u>Remedy</u>

Given the due process violations implicated in this case, I find that Mr. Loja's immediate release is appropriate. However, Mr. Loja will be subject to reasonable conditions of supervision. *See Garcia*, 2025 WL 3466312 at *11.

**III.  CONCLUSION**

For the foregoing reasons, the Petition for Writ of Habeas is <u>GRANTED</u>. Respondents are <u>ORDERED</u> to release Mr. Loja under reasonable conditions of supervision no later than 6pm on Tuesday, April 28. Respondents shall file a status report within 24 hours of Petitioner's release confirming that release and identifying any reasonable conditions imposed.


SO ORDERED.

/s/ Myong J. Joun
United States District Judge